74  181
175s 284

## John Hancock Mutual Life Insurance Co. v. Paulina Schlink.

1. Insurance—*Waiver of Conditions of Policy by Agent.*—An insurance policy containing a provision that it should "not take effect until delivered, and the first premium paid thereon during the lifetime and good health of the insured," was sent to the agent who secured the application and delivered by him to the insured while he was sick, on payment of part of the premium in cash and agreement as to the settlement of the remainder in merchandise. *Held,* under the circumstances, the agent was authorized to waive the conditions of the policy above quoted, and that his action in receiving part of the premium and arranging for the remainder was binding on the insurance company.

Assumpsit, on an insurance policy. Appeal from the Circuit Court of Peoria County; the Hon. Thomas M. Shaw, Judge, presiding. Heard in this court at the December term, 1897. Affirmed. Opinion filed February 28, 1898.

Isaac C. Edwards, attorney for appellant.

John M. Niehaus and Page, Wead & Ross, attorneys for appellee.

MR. PRESIDING JUSTICE CRABTREE DELIVERED THE OPINION OF THE COURT.

This was an action upon a policy of insurance issued by appellant upon the life of Frederick Schlink, the husband of appellee. There was a trial by jury resulting in a verdict and judgment in favor of appellee for $2,175.

The facts of the case, briefly stated, are as follows:

Charles Ballance was acting as agent for appellant at Peoria, under a contract with J. B. Pendergast, the State agent of appellant for the State of Illinois. Ballance had an office in Peoria, which had upon it a business sign designating him as general agent of appellant, and upon the stationery used by him, he so called himself. While purporting to act as such agent, Ballance solicited Frederick Schlink, appellee's husband, to take out a policy of insurance upon his life, in appellant company. After some negotiations between the parties, an arrangement was made between Ballance and Schlink for the issuance of a policy on the life of the latter for $2,000, upon which the premium was to be $63.70. In payment of this premium it was agreed by the parties that a certain indebtedness of $18, owing by one Downey to Schlink, should be assumed by Ballance and canceled, and that Ballance should take and receive from Schlink in further part payment of the premium, a sewing machine, to be selected by the wife of Ballance from machines which Schlink had on hand for sale, and the difference either way was to be paid in cash. That is, if the machine and the Downey indebtedness amounted to more than the premium, Ballance should pay the difference in cash to Schlink; and, on the other hand, if these two items did not pay the premium, Schlink should pay Ballance the difference in cash. In accordance with this agreement, Frederick Schlink made and delivered to Ballance a formal application for a policy of insurance upon his life for the sum of $2,000, which was forwarded by said Ballance to appellant company, which accepted the risk, issued the policy, and returned the same to Ballance for delivery. After receiving the policy Ballance saw the assured, Frederick Schlink, and.

notified the latter he had the policy, and was told to come and get the sewing machine and the money for the premium. Before the policy was actually delivered, the assured became ill with typhoid fever, whereupon the agent, Ballance, called upon George Schlink, a brother of the assured, informed him about the agreement and the policy, and told said George Schlink that if he would pay $25, he, the agent, would put the policy in force. After seeing the attending physician, said George Schlink went to the office of Ballance to pay the money and get the policy.

Ballance being absent, his clerk accepted the $25 and delivered the policy. Three days afterward the assured, Frederick Schlink, died from the effects of the typhoid fever.

The policy contained the following provision: " This policy shall not take effect until delivered, and the first premium thereon paid during the lifetime and good health of the insured." To the plaintiff's declaration appellant pleaded the general issue and four special pleas, setting up the above mentioned clause in the policy, and alleging " that the first premium on said policy was not paid ' during the good health of the insured' or at any other time." The four special pleas substantially set up the same defense. Various replications were filed, traversing the special pleas as to their material allegations, while other replications confessed and attempted to avoid the effect of the pleas by averring an acceptance of the premium and a waiver of the condition of the policy above quoted. Appellant insists that the premium was never paid; that the agent had no authority to receive anything but cash for the premium, and had no power to waive any of the conditions of the policy. On the other hand, it is contended by appellee, that under the provisions of Sec. 23, Chap. 73 of the Revised Statutes of 1874 (2 Starr & Curtis, 2d Ed., par. 193), Ballance was such an agent as authorized him to waive payment of the premium in cash and the condition of the policy above referred to. That appellant recognized Ballance as its agent by accepting the risk upon an application sent in

by him, issuing the policy and sending it to him for delivery upon payment of the premium, would hardly seem to be an open question. He was clearly an agent within the meaning of the statute. He solicited business for appellant, advertised himself as its agent, and was the only party known to the assured in the transaction.

Under all the facts we are of opinion Ballance was so far the agent of the company as to be authorized to waive the condition of the policy above quoted, and that his action in receiving the premium and delivering the policy was binding on appellant. Metropolitan Life Ins. Co. v. Quandt, 69 Ill. App. 649; New England Fire & M. Ins. Co. v. Schettler, 38 Ill. 166; Ætna Ins. Co. v. Maguire, 51 Ill. 342; Dwelling House Ins. Co. v. Dowdall, 159 Ill. 179.

Many other cases might be cited in support of this position out we deem it unnecessary. There can be no doubt whatever that Ballance authorized his clerk to receive the $25 and deliver the policy, and that he was fully informed of the physical condition of the assured at the time he proposed to "put the policy in force" on the receipt of the $25.

As to the contention that Ballance was not authorized to receive anything but cash in payment of the entire premium, we think the position has no force. The evidence shows that the agent's commissions, or percentage, were from seventy to seventy-five per cent of the premium to be paid, so that the cash going to appellant would not exceed $20 at the outside, and more than this amount was paid in cash.

The case of Lycoming Fire Ins. Co. v. Ward, 90 Ill. 545, would seem to be conclusive against appellant upon this proposition. It is also insisted that the remainder of the premium has never been paid; but by the agreement, Ballance was to take a sewing machine for that portion of the premium, to be selected by his wife. The witness George Schlink, testifies that when Ballance told him he would put the policy in force on payment of the $25, he also said he would let his wife come down and pick out the sewing machine, and the witness further swears that Ballance could

have gotten the machine at any time whenever he wanted it. Ballance does not in any way contradict the statements of the witness on these points.

It would seem, therefore, that so far as appellant is concerned the premium was paid, and if its agent, Ballance, saw fit to trust the agent of the assured for so much of the premium as was coming to him for commissions, and to take his pay therefor in a sewing machine, that was a ·matter between the parties themselves which could not injuriously affect the rights of appellant nor that of the assured.

There is no claim made in the pleadings, nor does the evidence show that any fraud was practiced upon the agent to induce a waiver in the conditions of the policy, or to obtain its delivery, and we see no just reason why appellant should not be held liable.

Some complaint is made as to the action of the court in admitting and rejecting evidence, but if any errors exist in that regard they are not of a sufficiently serious character to require a reversal.

We find no material error on the part of the court in giving or refusing instructions, and we are of the opinion the judgment should be affirmed.